UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

TYSON PASOUR,

    Plaintiff,

vs.

SEMINOLE HARD ROCK
ENTERTAINMENT, INC.,
SEMINOLE HARD ROCK
INTERNATIONAL, LLC,
SEMINOLE HARD ROCK
SUPPORT SERVICES, LLC

    Defendants.
_____/

**COMPLAINT**

Plaintiff, TYSON PASOUR ("Pasour") sues SEMINOLE HARD ROCK ENTERTAINMENT, INC., SEMINOLE HARD ROCK INTERNATIONAL, LLC, SEMINOLE HARD ROCK SUPPORT SERVICES, LLC (collectively, "The Casino") and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought against the Casino pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended.

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

3. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) as all Defendants do business in and/or reside in this district and all of the acts and omissions giving rise to this action occurred in Tampa, Florida.

**PARTIES**

4. At all times relevant, Tyson Pasour is and was a citizen of Hillsborough County, Florida,

and over the age of 18.

5. Pasour is a 75-year-old African American man.

6. Seminole Hard Rock Entertainment, Inc. ("SHR Entertainment") is a Florida profit corporation with its principal place of business and headquarters in Hollywood, Florida.

7. Seminole Hard Rock International, LLC ("SHR International") is a Florida Limited Liability Company with its principal place of business and headquarters in Davie, Florida.

8. Upon information and belief SHR Entertainment and SHR International jointly own and operate the Seminole Hard Rock Casino in Tampa, Florida.

9. Seminole Hard Rock Support Services, LLC ("SHR Support") is a Florida Limited Liability Company with its principal place of business in Davie, Florida.

10. Upon information and belief, SHR Support hires, provides, and employs the employees to work SHR Entertainment and SHR International's Tampa, Florida location.

## GENERAL ALLEGATIONS

11. Pasour and his wife have lived in Florida since the year 2000, and Pasour retired from his job in 2003.

12. During retirement, Pasour and his wife thoroughly enjoyed their frequent trips to the Seminole Hard Rock Casino in Tampa, Florida.

13. On December 12, 2018, Pasour and his wife visited the Seminole Hard Rock Hotel and Casino, Tampa.

14. Pasour visited the poker snack bar to get a pulled pork sandwich and a cup of water.

15. Once he got his sandwich and water, Pasour reached and pulled a straw from the container on the counter.

16. Nathan (last name unknown), an employee of the snack bar, saw Pasour do this and exclaimed, "I saw you do that and now I have to call security!"

17. Pasour asked what he did in order to have Nathan call security. Nathan responded by saying, "I saw you take the straw without approval and now I have to report you to security!" Pasour again asked what he was being reported for, but Nathan ignored and walked away without responding.

18. On December 13, 2018, Pasour and Mrs. Pasour visited the Casino again, and Pasour went back to the poker snack bar. On this occasion, Pasour ordered a Coney Island Chili Dog from Nathan. Pasour ordered and then asked Nathan for extra onions on his chili dog. Nathan said it would cost "extra." When Pasour asked why this would cost extra, Nathan responded, "because it's you." Nathan then walked away.

19. At that time, Pasour then noticed another patron, who was a white man, order a Coney Island Chili Dog with extra onions. This man was not told he would be charged extra for the additional onions.

20. Pasour made notes of this incident, and on December 20, 2018, he reported both incidents to the Casino's food and beverage manager, Chris (last name unknown).

21. Chris did not have Pasour fill out a statement, nor did he take any notes of his own while this report was made.

22. On January 2, 2019, again returned to the Casino, and visited the poker snack bar. He ordered a Coney Island Chili Dog, but this time it was from another employee.

23. While Pasour was completing his purchase, he held out his Player's Club ID. Nathan approached the two, and then told the other employee that Pasour, "has a fake ID and we don't take fake ID's." Pasour was too shocked to respond.

24. On January 3, 2019, Pasour again visited the poker snack bar. He waited in line behind nine other patrons. The only employee working behind the counter was a young woman.

25. Pasour notice Nathan moving around from the poker room to the men's room, then over to an employee only area, as if he were looking for someone or something. Pasour noticed this

because he was logically attempting to avoid Nathan.

26. Nathan then returned behind the snack bar and said to those waiting, "next in line." Pasour stayed in the line he was already in because of his past encounters with Nathan.

27. Nathan then singled out Pasour and told him that he had to switch over to his line because the other employee had "too many customers." Pasour reluctantly went to Nathan's line and proceeded to order a bowl of chili with extra onions.

28. While signing his receipt, Nathan said to him, "what are you going to find wrong tonight that is not good enough for you? You are just one nasty nigger."

29. Pasour was humiliated, and understandably angered. Pasour then raised his voice and told Nathan that he would not tolerate this type of mistreatment any longer. A security guard then approached and asked Pasour to step aside and discuss the issue. Pasour obliged.

30. Chris and a security supervisor were called down to the scene and Pasour told the two what had just happened. Chris stated that he would talk to Nathan, but that Nathan was "not going anywhere," and that Pasour should only have other snack bar employees wait on him from now on. Pasour informed Chris that he had tried that already and the past two incidents had been initiated by Nathan. Pasour then tried to explain that Nathan's behavior has been racially motivated, and when he tried to provide examples, Chris shut down his attempt to explain.

31. At this point, Pasour had concluded that Nathan was likely running around the poker room area attempting to find a security guard to have nearby when he waited on Pasour, and purposely agitated him into becoming upset so that he would raise his voice or make a scene in front of the security guard.

32. On January 10, 2019, Pasour again visited the poker room snack bar. This time he was waited on by a young woman. Pasour ordered a bowl of chili with extra onions to go.

33. As he waited at the end of the counter for his order, Nathan walked by and taunted

Pasour by calling out several times, "extra onions, extra onions, who wants extra onions?" Pasour recognized this as an attempt to instigate another incident, and therefore ignored him.

34. On January 29, 2019, Pasour received a letter from the Director of Security for the Casino, Steven Karaisz, which stated that due to the incident that occurred on January 3, 2019, Pasour was trespassed from all Seminole Casinos, Hard Rock Live, and all the restaurants located in the casinos for a period of one year, despite years of being a loyal patron of the Casino without any incidents or issues whatsoever.

35. This letter had come with directions on how to appeal the one-year trespass. Pasour had several conversations with Mr. Karaisz, who encouraged him to appeal the decision.

36. Accordingly, on or about April 1, 2019, Pasour submitted his appeal as directed by the January 29 letter.

37. On July 10, 2019, Pasour learned the outcome of his appeal via a written letter, signed by Gordon S. Dickie as Executive Director of the Seminole Tribal Gaming Commission.

38. In this letter, Mr. Dickie informed Pasour that he had upgraded Pasour's one year ban to a lifetime trespass as to not only all the Seminole casinos, but all hotels, restaurants, retail shops, parking, Hard Rock Live, or any leased premises/outlets at any outside casino location, without any further explanation.

39. Since he was trespassed from the Casino in late January 2019, Pasour has not returned to the Casino, and he has been deprived of what was a large and enjoyable part of his retirement years with Mrs. Pasour.

40. All conditions precedent to the filing of this action have occurred.

## COUNT I
## **VIOLATION OF § 1981 – DISCRIMINATION**
## **(All Defendants)**

41. Pasour repeats, realleges and incorporates by reference paragraphs 1-40 as though fully

stated herein.

42. "The elements of a cause of action under § 1981 are (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (internal quotation marks omitted.)

43. As an African American, Pasour is a member of a "racial minority" as the term has been construed by the Supreme Court and Eleventh Circuit within the context of § 1981.

44. At all times material, the Casino knew Pasour is African American, and the Casino intentionally discriminated against Pasour on this basis. As stated above, the Casino wrongfully trespassed Pasour from the Seminole Hard Rock Casinos and other properties.

45. Pasour had an absolute unqualified right to be treated equally by the Casino; however, because Pasour is African American, the Casino intentionally discriminated against Pasour. In so doing, the Casino denied Pasour his right to enjoy the Casino on the same terms as enjoyed by white persons in violation of 42 U.S.C. § 1981.

46. The Casino is liable for the actions of its employees under the doctrine of *respondeat superior*.

47. As a direct and proximate result of the discriminatory conduct of the Casino, Pasour has suffered personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment justifying an award of compensatory damages and punitive damages, according to proof, from the Casino.

48. As a result of the deprivations of rights at the hands of the Casino, Pasour has retained The Goodwin Firm, and has agreed to pay The Goodwin Firm, a reasonable fee. Pasour is entitled to recover these reasonable fees from the Casino pursuant to 42 U.S.C. § 1988(b) and otherwise by law.

**WHEREFORE**, Plaintiff TYSON PASOUR, demands judgment against HARD ROCK

CASINO for the above damages, attorneys. fees, and costs pursuant to 42 U.S.C. 1988(b) and for such further relief as this Court deems just and equitable.

## COUNT I
## VIOLATION OF § 1981 – RETALIATION
## (SHR Entertainment and SHR International)

49. Pasour repeats, realleges and incorporates by reference paragraphs 1-40 as though fully stated herein.

50. Defendants SHR Entertainment and SHR International unlawfully banned Pasour from the Seminole Hard Rock Casino premises. Such action by these Defendants was taken in retaliation for Plaintiff's lawful exercise of his rights under § 1981 filed his report complaining of racial discrimination.

51. The denial of Plaintiff's application based on obviously mischaracterized evidence appears to be pretextual and violates the Fair Housing Act's prohibition against retaliatory conduct.

52. The actions of Defendants SHR Entertainment and SHR International were for the purpose of coercing, intimidating, threatening, or interfering with Plaintiff's exercise of his fair housing rights.

53. As a direct and proximate result of the retaliatory conduct of Defendants SHR Entertainment and SHR International, Pasour has suffered personal humiliation, loss of capacity for the enjoyment of life, mental anguish, and embarrassment justifying an award of compensatory damages and punitive damages, according to proof, from the Casino.

54. As a result of the deprivations of rights at the hands of Defendants SHR Entertainment and SHR International, Pasour has retained The Goodwin Firm, and has agreed to pay The Goodwin Firm, a reasonable fee. Pasour is entitled to recover these reasonable fees from the Casino pursuant to 42 U.S.C. § 1988(b) and otherwise by law.

## DEMAND FOR JURY TRIAL

Plaintiff, Tyson Pasour, respectfully demands a trial by jury of all issues so triable.

Respectfully Submitted,

*/s/ April S. Goodwin*
APRIL S. GOODWIN, ESQ.
FLORIDA BAR NO. 502357
The Goodwin Firm, P.A.
801 West Bay Drive, Suite 715
Largo, Florida 33770
Phone: (727) 316.5333
Email: april@goodwin-firm.com

*Attorney for Plaintiff*